**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

NARIN PRASERT VONG, Criminal No. 06-4596 (JMR/AJB)

Plaintiff,

v. **<u>REPORT AND RECOMMENDATION</u>**

JON LOFTNESS, ET AL.,

Defendants.

Narin Prasert Vong, *Pro Se*.

Frank J. Magill, Jr., Esq., Acting United States Attorney, and Mary Jo Madigan, Esq., Assistant United States Attorney, for Defendants-Jon Loftness, Carol Holinka, and Richard Lewis.

This matter is before the Magistrate Judge for Report and Recommendation ("R&R") on Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), lack of subject matter jurisdiction, and Rule 12(b)(6), failure to state a claim upon which relief can be granted [Docket No. 48]. Plaintiff was a federal prisoner incarcerated at FCI-Waseca, Minnesota. Defendant Jon Loftness is identified in the complaint as the Regional Inmate Systems Administrator for the Federal Bureau of Prisons ("BOP") North Central Regional Office, Kansas City, Kansas. See Compl. ¶ 2 [Docket No. 1]. Defendant Carol Holinka is the Warden at FCI-Waseca. Id. at ¶ 3. Defendant Richard Lewis is the Computer Service Manager at FCI-Waseca. Id. at ¶ 4. Plaintiff filed a *pro se* complaint for violation of civil rights under 42 U.S.C. § 1983 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388

(1971).[1] The complaint asserts violations of Plaintiff's constitutional rights arising out of Defendants' refusal to allow him access to certain computer programming books. Plaintiff seeks compensatory and punitive damages.

Defendants now move for dismissal of the claims against them because: (1) Plaintiff's claims are barred by the doctrine of sovereign immunity; (2) Plaintiff's Complaint fails to state a claim upon which relief can be granted; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff failed to exhaust his administrative remedies.

The matter has been referred to the undersigned for R&R under 28 U.S.C. § 636 and Local Rule 72.1(c). For reasons discussed below the undersigned concludes that Plaintiff's Complaint should be dismissed for failure to state a viable Bivens claim against Defendants. Furthermore, Defendants are entitled to qualified immunity in their individual capacities and sovereign immunity precludes recovery for damages from Defendants in their official capacities.

**BACKGROUND**

Plaintiff is a convicted felon who served a 147-month sentence for crimes that involved conspiracy to defraud the United States-aiding and abetting robbery affecting interstate commerce,

---

[1] "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 464 U.S. 14, 18 (1980).

The Eighth Circuit has stated that "[t]his court has referred to a Bivens action as 'the federal law analogous to § 1983.'" Sanchez v. United States, 49 F.3d 1329, 1330 (8th Cir. 1995)(citations omitted). "[A]n action under Bivens is almost identical to an action under section 1983, except that the former is maintained against federal officials while the latter is against state officials." Id. (citation omitted). "'The effect of Bivens was, in essence, to create a remedy against federal officers, acting under color of federal law, that was analogous, to the § 1983 action against state officials.'" Bellecourt v. United States, 784 F.Supp. 623, 629 (D. Minn. 1992)(citations omitted).

aiding and abetting use of a firearm in a crime of violence, and aiding and abetting use robbery affecting interstate commerce. See Bitz. Decl. at ¶ 3 [Docket No. 50]. Plaintiff's term of imprisonment expired on January 7, 2008.[2] Id.

The main issue in this case is that Plaintiff was denied access to five computer books. While Plaintiff was not prohibited from receiving all publications, Plaintiff was not entitled to receive publications determined by the BOP Warden to be "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." Id. at ¶ 4; see also 28 C.F.R. § 540.71(b). On May 9, 2005, a book entitled Introduction to Networking Using NETWARE (4.1x) was denied to Plaintiff by Defendant Holinka upon the recommendation of Defendant Lewis after review of said book. See Compl. Exs. B-1, B-2. This book was rejected because "inmates may not possess local area network [LAN] security information." Id. at B-2. "This book contained advanced information on how to configure a Novell server, which was the same software used for security of the FBOP LAN and inmate LAN" at FCI-Waseca and could have been used by Plaintiff to "bypass the security features of the LAN or destroy the configuration files on the LAN." See Defs.' Mem. 3 [Docket No. 49].

On September 12, 2005, two books entitled How to Do Just About Anything in MSExcel and Computer Forensics: Hacking Exposed, Secrets & Solutions were denied to Plaintiff by Defendant

[2] After Plaintiff was released from BOP custody he was promptly placed into U.S. Immigration and Customs Enforcement ("ICE") custody for removal proceedings. A deportation hearing was scheduled on or about April 14, 2008. Pursuant to a "Notice of Change of Address" [Docket No. 53] filed by Plaintiff on April 23, 2008, the Court is now under the impression that Plaintiff has now been released from ICE custody.

Holinka upon the recommendation of Defendant Lewis after review of said books. See Compl. Exs. C-1, C-2, C-3. These books were rejected because they contained instructions on computer hacking and advanced computer programming. Id. at C-2, C-3. On October 11, 2005, Defendant Loftness reviewed the denial and affirmed Holinka's decision. Id. at Ex. C-3. Defendants claim that Computer Forensics: Hacking Exposed, Secrets & Solutions was rejected because it "contained information that would have allowed Vong to bypass security features on workstations and to hack into computer networks, such as the computers used by inmates in the UNICOR factory that are connected to the WAN at FCI." See Defs.' Mem. 4. The How to Do Just About Anything in Microsoft Excel book "contained information that would have allowed Vong to use macros to create a virus to delete a database or hide information on the computer system from staff members." Id.

On August 22, 2006, two books entitled Microsoft SQL Server 2005-Beginner's Guide and Microsoft SQL Server 2005-Developer's Guide were denied to Plaintiff by Defendant Holinka upon the recommendation of Defendant Lewis after review of said books. See Compl. Exs. E-1, E-2. These publications were determined to be detrimental to the security of FCI because they discussed how to program computers, including how to install, configure, and maintain servers as well as how to maintain security of the computer programs. Id. at E-2. Defendants stated that these two publications "contained information about the same software used on the UNICOR LAN, and Vong could have used that information to create, modify, manipulate or hide databases concerning the UNICOR factory operations." See Defs.' Mem. 5.

**DISCUSSION**

**Rule 12(b)(1)**

A motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may challenge either the factual truthfulness or the facial sufficiency of the plaintiff's jurisdictional allegations. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993)(citing Osborn v. U.S., 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Whether a Rule 12(b)(1) motion presents a "factual challenge" to subject matter jurisdiction depends not on whether the movant has submitted matters outside the pleading for the district court's consideration, but rather on whether the district court must inquire into and resolve factual disputes. See Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002). In a factual challenge, the court considers matters outside the pleadings. Osborn, 918 F.2d at 729 n. 6. No presumptive truthfulness attaches to plaintiff's factual allegations and the court may weigh the evidence to determine if it has the power to hear the case. Id. at 730. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Id. The court may consider affidavits and other documents in resolving the issues before it concerning subject matter jurisdiction. Id. "Jurisdictional issues, whether they involve questions of law or fact, are for the court to decide." Id. at 729. "[T]he trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Id. at 730. Plaintiff will have the burden of proof that jurisdiction does in fact exist. Id.

*Official Capacity and Sovereign Immunity*

In an action under 42 U.S.C. § 1983 a public servant may be sued in an official capacity, an individual capacity, or both. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999). In order to sue a public official in his or her individual capacity, a plaintiff must expressly

and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity. Id. (citations omitted). Because Section 1983 liability exposes public servants to civil liability and damages, the Eighth Circuit has held that only an express statement that they are being sued in their individual capacity will suffice to give proper notice to the defendants. Id. (citations omitted). Absent such an express statement, the suit is construed as being against the defendants in their official capacity. Id. A suit against a public employee in his or her official capacity is merely a suit against the public employer. Id. (citations omitted). Upon review of the pleadings, the Court finds that Plaintiff has failed to expressly and unambiguously state that he is suing Defendants in their individual capacities. In his response brief to Defendant's motion to dismiss, Plaintiff first argues that his claims are against Defendants in their individual capacities because each Defendant is named individually. See Mem. 3 [Docket No. 52]. However, a brief is not a pleading as defined by Fed. R. Civ. P. 7(a). Therefore, since Defendants are all federal employees the proper party-in-interest is the United States.

Absent a waiver, sovereign immunity shields the United States Federal Government and its agencies from suit. FDIC v. Meyer, 510 U.S. 471, 475 (1994); Correctional Servs. Corp. v. Malesko, 534 U.S. 61, 72 (2001)(prisoner may not bring a Bivens claim against the United States). As previously stated, Plaintiff's claims are against Defendants in their official capacity which means the United States, as their employer, is the true party. Because the United States has not waived its sovereign immunity is this case, Plaintiff's claims for relief should be dismissed for lack of subject matter jurisdiction.

**Rule 12(b)(6)**

In the alternative, a complaint that is being challenged on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" in order to avoid dismissal. Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). Factual allegations must be sufficient "to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." Id. (citing 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 pp. 235-36 (3d ed. 2004)("[T]he pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"). Moreover, a complaint is not adequate merely because the pleading "left open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968. A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. Id. at 1974. Also, it remains the case that a plaintiff cannot merely rely upon general and conlusory allegations to survive a Rule 12(b)(6) motion (Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985)), but the court must presume that factual allegations in the complaint are true and accord reasonable inferences in favor of the non-moving party. Holloway v. Lockhart, 792 F.2d 760, 762 (8th Cir. 1986).[3] A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Twombly, 127 S.Ct. at 1964-65. Accordingly, a well-pleaded complaint

---

[3] A *pro se* complaint is to be liberally construed and should not be dismissed unless the plaintiff can prove no set of facts to support the claim(s). Ouzts v. Cummins, 825 F.2d 1276, 1277 (8th Cir. 1987).

will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965.

The court may grant a motion to dismiss on the basis of a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 326 (1989). "[I]f as a matter of law 'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations'...a claim must be dismissed, without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one." Id. at 327.

*Negligence Claim*

Plaintiff's Complaint alleges that Defendants were negligent in that they "owed a duty to properly train, supervise, and secure [BOP employees] to respect the constitutional rights of inmates." See Compl. 5. However, the Supreme Court has held that mere negligence is insufficient to trigger constitutional liability, including claims under Section 1983. Daniels v. Williams, 474 U.S. 327, 328 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986). Therefore, Plaintiff's negligence claim is not a viable constitutional violation under Bivens and should be dismissed.

*Civil Contempt Claim*

Plaintiff's claim that Defendants' actions constituted contempt of court also fails to state an actionable Bivens claim. Civil contempt is a remedy available to a court to enforce compliance with a clear, specific underlying order. Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir. 2006). Plaintiff argues that in light of King v. FBOP, 415 F.3d 634 (7th Cir. 2005)[4] that Defendants were put on notice of this constitutional right and in contempt of court by choosing to

[4] The King Court recognized that the First Amendment includes not only the freedom to speak, but also the freedom to read. See 415 F.3d at 638.

"ignore and disregard" this case law upon answering Plaintiff's appeal to the rejection of the computer books. See Compl. 5. However, the King decision did not resolve the question of whether the denial of computer programming books to a prisoner was unconstitutional. In fact, the King Court recognized that there are "valid penological reasons for limiting prison inmates access to certain types of books." King, 415 F.3d at 638-39 (citations omitted). Most importantly, the Defendants in this case were not involved in the King case and are thereby not in civil contempt of its decision. Thus, Plaintiff's claim for relief based on civil contempt should also be dismissed.

*First Amendment Claim*

Plaintiff claims that his First Amendment right to read was violated when Defendants denied him access to computer books. See Compl. 4; see also Stanley v. Georgia, 394 U.S. 557 (1969); see generally Griswold v. Connecticut, 381 U.S. 479, 482 (1965). While imprisonment does not automatically deprive an inmate of a constitutional right, the Constitution does permit greater restrictions on the exercise of the right in a prison setting. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987); Turner v. Safley, 482 U.S. 78, 84-85 (1987). A prison rule that restricts a constitutional right must be "reasonably related" to a legitimate penological interest. Turner, 482 U.S. at 89. Several factors are relevant in determining the reasonableness of the regulation at issue. First, there must be a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it.'" Id. A second relevant factor is whether there are alternative means of exercising the right that remain open to prison inmates. Id. A third consideration is the impact accommodation of the asserted constitutional right will have on inmates, prison employees, and on the allocation of prison resources generally. Id. Finally, the must determine whether there are ready alternatives for furthering

the government interest available. Id. Moreover, substantial deference is accorded to the professional judgment of prison administrators, "who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden is not on the Defendants to prove the validity of the prison regulation but rather for Plaintiff to disprove it. Id.

Before prison officials can censor a book requested by a prisoner, they must review the content of the book. Williams v. Brimeyer, 116 F.3d 351, 354 (8th Cir. 1997). In this case, the Court finds that the pleadings, even construed in Plaintiff's favor, support the contention that Defendants reviewed each computer book individually and made specific decisions as to each book in accordance with the BOP's Statement of Incoming Publications.[5] See Compl. Exs. B-2, C-2, C-3, E-2; see also BOP Program Statement, available at http://www.bop.gov/policy/progstat/5266_010.pdf (last visited April 23, 2008). Plaintiff was not denied access to all the computer books he requested, only those that involved computer programming. Defendants' decision to deny Plaintiff access to these books was also reasonable in light of the internal security issues that arise if a prisoner were able to access and alter certain computer networks and programs at FCI-Waseca or elsewhere. And the books were rejected for that purpose. This legitimate interest is further supported by the fact that Defendant was convicted of a crime involving a conspiracy to defraud the United States. Therefore, the Court concludes that

---

[5] The Court would note that the record does not include a "Notification to Inmate and Publisher/Sender of **Rejected** Publication" form for How to Do Just About Anything in Microsoft Excel as required by 28 C.F.R. § 540.71(d)(e). However, Plaintiff states in his Complaint that "[o]n August 13, 2005...the Computer Service Manager rejected two of those books [one being How to Do Just About Anything in Microsoft Excel], and the Warden issued a rejection letter citing the same." See Compl. ¶ 7.

Defendants' decisions were reasonable and Plaintiff's First Amendment claim should be dismissed.[6]

*Eighth Amendment Claim*

Plaintiff's allegation that Defendants' deliberate indifference in not allowing him access to computer books thereby "obstruct[ing] [his] legitimate education and rehabilitation" (see Compl. 5-6) could be liberally construed as an Eighth Amendment claim. To establish an Eighth Amendment claim the plaintiff must show a serious deprivation of "the minimal civilized measure of life's necessities" and "offending conduct [that is] wanton." Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Indeed, a plaintiff must establish that he was forced to endure conditions which amounted to "unnecessary and wanton infliction of pain and was grossly out of proportion to the severity of the crime." Weekly v. Cahalin, __ F.3d __, 2006 WL 2331186, at *1 (W.D. Mo., Aug. 8, 2006)(citing Gregg v. Georgia, 428 U.S. 153 (1976). Conditions are not cruel and unusual simply because they are harsh or uncomfortable. Id. at *1 (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)). An Eighth Amendment action challenging conditions of confinement requires a showing that jail officials have been *deliberately indifferent* to an inmate's

---

[6] The Court would note that Defendants offered evidence in their motion briefing (i.e. outside the pleadings) indicating that another reason why Plaintiff was not allowed access to certain computer books was due to his past education and work experience in computer programing and networking. See Defs.' Mem. 14. Even if the Court were to consider this evidence in ruling on Defendants' Rule 12(b)(6) thereby converting Defendants' Rule 12(b)(6) motion into a Rule 56(f) motion for summary judgement (see Buck v. F.D.I.C., 75 F.3d 1285, 1288 & n.3 (8th Cir. 1996); see also Skyberg v. United Food & Comm. Workers Int'l Union, AFL-CIO, 5 F.3d 297, 302 n.2 (8th Cir. 1993)(even where matters outside the pleadings are presented to the court, a motion to dismiss is not converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss")), said information concerning Plaintiff's computer background would merely offer additional support as to the reasonableness of Defendants' decisions to deny the books.

health or safety. McKinney, 176 F.3d at 1086 (emphasis added).

The complaint in this case does not contain allegations sufficient to establish a cause of action for an Eighth Amendment violation. In particular, Plaintiff fails to show how denial of computer books rises to the level of a "serious deprivation of the minimal civilized measure of life's necessities." There is also no case law to support the same.[7] Even assuming *arguendo* that Defendants' conduct hindered Plaintiff's educational pursuits and his ability to secure a clerical position at the UNICOR factory (see Compl. 2-6), Plaintiff has no independent right to a particular prison job or to a particular education program while incarcerated. See Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992). Therefore, the first requirement for an Eighth Amendment claim challenging an inmate's conditions of confinement has clearly not been met thereby making the second factor moot. The complaint fails to state an Eighth Amendment cause of action for violation of federal law and should be dismissed.

*Fifth Amendment Claim*

Out of an abundance of caution, Defendants state that Plaintiff's Complaint could be liberally construed to involve a Fifth Amendment claim for relief based on outrageous conduct by employees. See Defs.' Mem. 14. In order to prevail on this claim, Plaintiff must show that Defendants' conduct in this case was so outrageous and shocking that it exceeded the bounds of fundamental

---

[7] The Eighth Amendment requires prison officials to provide humane conditions of confinement, including adequate food, clothing shelter and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994); see also Rogers v. Kemna, 2008 WL 596250, at *4 (W.D. Mo. Mar.4, 2008)(Plaintiff's assertion that he was denied specific books he requested failed to support a claim that he was denied basis necessities of life, or that the denial was "sufficiently serious").

fairness. United States v. Leroux, 738 F.2d 943, 948 (8th Cir. 1984).

Plaintiff's fifth claim for relief is for "Abuses of Authority" whereby it is alleged that Defendants were "personally liable for constitutional deprivation by direct participation, failure to remedy wrongs after learning about it, creation of a poli[c]y or custom under which constitutional practices occur or gross negligence in managing subordinates who caused violations". See Compl. 6. Section 1983 provides a remedy only for violations of rights secured by federal statutes or the Constitution. Maine v. Thiboutot, 448 U.S. 1, 4 (1980). The Court concludes that this claim fails to state a proper constitutional or federal right and should be dismissed. See Siegert v. Gilley, 500 U.S. 226, 229 (1991)(A viable Bivens claim must include an act or omission by defendant that violated plaintiff's *clearly established constitutional right*)(emphasis added). Even if generously construed, the Court also finds that this claim is conclusory, speculative, and void of sufficient facts in the complaint to prove that Defendants conduct was demonstrably outrageous. As the Eighth Circuit has noted, "Government agents may go a long way in concert with the individual in question without violating due process." See Gunderson v. Schlueter, 904 F.2d 407, 410 (8th Cir. 1990).

**Qualified Immunity Defense**

Defendants also argue that the doctrine of qualified immunity protects them from liability for alleged misconduct which they reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred. "[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

"[W]hether an official protected by qualifies immunity may be held personally liable for an allegedly unlawful action generally turns on the 'objective legal reasonableness' of the action, assessed in the light of the legal rules that were 'clearly established' at the time it was taken." Wilson, 526 U.S. at 614. The contours of the constitutional right at issue "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," but "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of pre-existing law, the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 641 (1987)(citations omitted). Thus, "[t]he doctrine 'gives ample room for mistaken judgments but does not protect the plainly incompetent or those who knowingly violate the law.'" Bagby v. Brondhaver, 98 F.3d 1096, 1098 (8th Cir. 1996).

The Court has already determined that Plaintiff failed to sue Defendants in their individual capacities, which effectively means that this Court lacks jurisdiction over them. Additionally, the Court has concluded that the Defendants' rejection of Plaintiff's book requests did not violate the Constitution. Even if Plaintiff's Complaint could be construed to contain viable constitutional or federal claims, Defendants are clearly entitled to qualified immunity, as the unlawfulness of such acts was far from apparent. Each book was reviewed, and Plaintiff was advised of the specific reasons why each publication was rejected by Defendants. See Compl. Exs. B-2, C-2, C-3, E-2. Accordingly, Defendants' motion to dismiss is also warranted by the doctrine of qualified immunity.

**Exhaustion of Administrative Remedies**

Finally, Defendants argue that Plaintiff's claims for relief should be dismissed for lack of subject matter jurisdiction because he failed to exhaust his administrative remedies when Defendants denied him access to several computer programming books. Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[8] 42 U.S.C. § 1997e(a). "Under the [PLRA], failure to exhaust the available administrative remedies is not a matter of subject matter jurisdiction." Lenz v. Wade, 490 F.3d 991, 993 n.2 (8th Cir. 2007).[9] Nevertheless, "[i]n the event that a claim... fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief, the court may dismiss the underlying claim[s] without first requiring the exhaustion of administration remedies." 42 U.S.C. § 1997e(c)(2). Thus, the Court finds that there are adequate grounds for dismissal under Rule 12(b)(6) analysis above which moots Defendants' argument that Plaintiff failed to exhaust his administrative remedies.

Based upon the foregoing discussion, the Court **HEREBY RECOMMENDS** that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [Docket No. 48] be

[8] The exhaustion requirement under 42 U.S.C. § 1997e(a) includes Bivens actions (i.e. "any other Federal law"). See Porter v. Nussle, 534 U.S. 516, 524 (2002).

[9] However, the Court would note the confusion in Defendants' briefing on whether its exhaustion argument falls under the Rule 12(b)(1) or 12(b)(6) argument for dismissal because said argument does not fall under Section "D. Vong's Complaint Should Be Dismissed For Failure To State a Claim" (see Defs.' Mem. 10) and they cite to evidence outside of the pleadings with respect to said argument (see id. at 9).

**GRANTED** and that the complaint [Docket No. 1] in this matter be **DISMISSED WITH PREJUDICE**.

Dated: May 1, 2008

s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **May 15, 2008**.